**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| NASDAQ PRIVATE MARKET, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE HIIVE COMPANY LIMITED,<br>HIIVE MARKETS LIMITED,<br>THE HIIVE COMPANY (US) INC.,<br>HIIVE ADVISORS INC., and<br>HIIVE INVESTMENTS INC.<br><br>Defendants. | C.A. No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Nasdaq Private Market, LLC ("NPM"), for its Complaint against Defendants The Hiive Company Limited, Hiive Markets Limited, The Hiive Company (US) Inc., Hiive Advisors Inc., and Hiive Investments Inc. (collectively, "Hiive" or "Defendants"), states and alleges as follows:

**PARTIES**

1.      Plaintiff Nasdaq Private Market, LLC is a limited liability company, organized under the laws of Delaware, with its principal place of business at 3 East 28th Street, 7th Floor, New York, NY 10016.

2.      On information and belief, Defendant The Hiive Company Limited is incorporated in Canada, with its principal place of business at 700 - 980 Howe Street, Vancouver, British Columbia V6Z 0C8, Canada.  On information and belief, The Hiive Company Limited is the ultimate corporate parent of Hiive Markets Limited, The Hiive Company (US) Inc., Hiive Advisors Inc., and Hiive Investments Inc. (collectively, the "Hiive

Entities").  On information and belief, The Hiive Company Limited directs the management, policies, and activities of the Hiive Entities.

3.  On information and belief, Defendant Hiive Markets Limited is incorporated in Canada, with its principal place of business at 700 - 980 Howe Street, Vancouver, BC, Canada V6Z 0C8. Hiive Markets Limited is registered with the Financial Industry Regulatory Authority (FINRA) and the Securities Investor Protection Corporation (SIPC) and is approved to operate as a broker-dealer in all fifty (50) states of the U.S., as well as the District of Columbia, Puerto Rico, and the Virgin Islands.

4.  On information and belief, Defendant The Hiive Company (US) Inc. is incorporated in Delaware, with its principal place of business at 169 Madison Avenue, Suite 11524, New York, NY 10016.

5.  On information and belief, Defendant Hiive Advisors Inc. is incorporated in Delaware, with its principal place of business at 169 Madison Avenue, Suite 11524, New York, NY 10016.

6.  On information and belief, Defendant Hiive Investments Inc. is incorporated in Delaware, with its principal place of business at 169 Madison Avenue, New York, NY 10016.

## NATURE OF THE ACTION

7.  This action is for infringement of U.S. Patent No. 12,572,980 (the "'980 Patent" or the "Asserted Patent") under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.

8.  This action involves Hiive's manufacture, use, sale, offer for sale, and/or importation of financial products and services that infringe the Asserted Patent.

2

**JURISDICTION AND VENUE**

9.     This Court has original jurisdiction over the subject matter of this Complaint under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. §§ 271, *et seq.*

10.    Defendant The Hiive Company Limited is subject to personal jurisdiction in this Judicial District at least because, on information and belief, The Hiive Company Limited: (1) is the ultimate corporate parent of the Hiive Entities and exercises direction and control over their management, policies, and activities; (2) has purposefully availed itself of the privileges of conducting business in this Judicial District by, among other things, directing and controlling the offer and sale of products and services that practice the Asserted Patent to customers, business affiliates, and partners located in this Judicial District; (3) has committed acts of patent infringement in this Judicial District by directing, controlling, and benefiting from the infringing activities of its subsidiaries and/or affiliates; and (4) has committed acts of patent infringement in this Judicial District by making, using, selling, offering for sale, importing, and/or otherwise providing products and services that practice the Asserted Patent to customers, business affiliates, and partners located in this Judicial District.

11.    Defendant Hiive Markets Limited is subject to personal jurisdiction in this Judicial District at least because, on information and belief, Hiive Markets Limited: (1) is registered with FINRA as a broker-dealer approved to operate in Delaware and does operate in Delaware; (2) has purposefully availed itself of the privileges of conducting business in this Judicial District by, among other things, directing and controlling the offer and sale of products and services that practice the Asserted Patent to customers, business affiliates, and partners located in this Judicial District; (3) has committed acts of patent infringement in this Judicial

3

District by directing, controlling, and benefiting from the infringing activities of its subsidiaries and/or affiliates; and (4) has committed acts of patent infringement in this Judicial District by making, using, selling, offering for sale, importing, and/or otherwise providing products and services that practice the Asserted Patent to customers, business affiliates, and partners located in this Judicial District.

12.    Defendant The Hiive Company (US) Inc. is subject to personal jurisdiction in this Judicial District at least because, on information and belief, The Hiive Company (US) Inc.: (1) is incorporated in Delaware; (2) has a registered agent for service of process in this Judicial District; (3) has purposefully availed itself of the privileges of conducting business in this Judicial District by, among other things, directing and controlling the offer and sale of products and services that practice the Asserted Patent to customers, business affiliates, and partners located in this Judicial District; (4) has committed acts of patent infringement in this Judicial District by directing, controlling, and benefiting from the infringing activities of its subsidiaries and/or affiliates; and (5) has committed acts of patent infringement in this Judicial District by making, using, selling, offering for sale, importing, and/or otherwise providing products and services that practice the Asserted Patent to customers, business affiliates, and partners located in this Judicial District.

13.    Defendant Hiive Advisors Inc. is subject to personal jurisdiction in this Judicial District at least because, on information and belief, Hiive Advisors Inc.: (1) is incorporated in Delaware; (2) has a registered agent for service of process in this Judicial District; (3) has purposefully availed itself of the privileges of conducting business in this Judicial District by, among other things, directing and controlling the offer and sale of products and services that practice the Asserted Patent to customers, business affiliates, and partners located in this Judicial

District; (4) has committed acts of patent infringement in this Judicial District by directing, controlling, and benefiting from the infringing activities of its subsidiaries and/or affiliates; and (5) has committed acts of patent infringement in this Judicial District by making, using, selling, offering for sale, importing, and/or otherwise providing products and services that practice the Asserted Patent to customers, business affiliates, and partners located in this Judicial District.

14.     Defendant Hiive Investments Inc. is subject to personal jurisdiction in this Judicial District at least because, on information and belief, Hiive Investments Inc.: (1) is incorporated in Delaware; (2) has a registered agent for service of process in this Judicial District; (3) has purposefully availed itself of the privileges of conducting business in this Judicial District by, among other things, directing and controlling the offer and sale of products and services that practice the Asserted Patent to customers, business affiliates, and partners located in this Judicial District; (4) has committed acts of patent infringement in this Judicial District by directing, controlling, and benefiting from the infringing activities of its subsidiaries and/or affiliates; and (5) has committed acts of patent infringement in this Judicial District by making, using, selling, offering for sale, importing, and/or otherwise providing products and services that practice the Asserted Patent to customers, business affiliates, and partners located in this Judicial District.

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Defendants The Hiive Company (US) Inc., Hiive Advisors Inc., and Hiive Investments Inc. are incorporated in Delaware and therefore reside in this Judicial District for purposes of venue.  Venue is also proper as to Defendants The Hiive Company Limited and Hiive Markets Limited because they are foreign corporations and, pursuant to 28 U.S.C. § 1391(c)(3), are therefore subject to venue in any judicial district in the United States.

Additionally, on information and belief, Defendants have committed acts of patent infringement in this Judicial District by making, using, selling, offering for sale, importing, and/or otherwise providing infringing products and services within this Judicial District.

## NPM'S INVENTION AND THE ASSERTED PATENT

16. Originally founded in 2013 within Nasdaq, Inc., NPM separated from Nasdaq, Inc. to become an independent company in 2021. NPM provides liquidity, investment, wealth, and data solutions for private companies, employees, and investors throughout each stage of the pre-IPO (initial public offering) lifecycle.

17. NPM developed an innovative and proprietary platform for standardizing the clearing and settlement of private company share transfers ("NPM's Clearing and Settlement Platform"). NPM's Clearing and Settlement Platform provides an end-to-end workflow that brings speed, reliability, and transparency to a historically manual and bespoke market.

18. NPM's Clearing and Settlement Platform addresses a fundamental challenge facing the secondary market for private company shares—that there is no industry-wide standard for how transfer information is provided, received, or processed. Each private company has its own transfer rules, documentation requirements, and approval processes. As a result, before NPM's Clearing and Settlement Platform, settlement timelines in private markets historically extended to 90 days or longer.

19. As of March 23, 2026, NPM's Clearing and Settlement Platform had processed more than $1.5 billion in total transaction value across 2,000 trades, including $650 million across 1,200 trades in 2025 alone. NPM partners with more than 150 private company clients, and transactions settled through NPM close 12 days faster on average than those settled outside its platform.

6

20.    NPM sought to patent the innovative processes and technology of NPM's Clearing and Settlement Platform and was awarded the '980 Patent, which is entitled "Private Company Securities Clearing and Settlement Platform" and duly issued to NPM on March 10, 2026.  The '980 Patent claims priority to U.S. Provisional Patent Application No. 63/462,163, which was filed on April 26, 2023, and to U.S. Provisional Patent Application No. 63/503,306, which was filed on May 19, 2023.  A true and correct copy of the '980 Patent is attached hereto as Exhibit A.

21.    NPM is the owner by assignment of the Asserted Patent. NPM owns all rights and title to the Asserted Patent, including the right to enforce and recover damages for infringement of the Asserted Patent.

<strong><u>HIIVE'S INFRINGING ACTIVITIES</u></strong>

22.    Hiive infringes one or more claims of the '980 Patent by making, using, selling, offering for sale, importing, and/or otherwise providing Hiive's private company securities trading platform, "Hiive Transaction Administration" products and services, and/or associated user interfaces, dashboards, and workflow tools—including the "Hiive Issuer Interface"—for private company stock transfers and settlements (collectively, these products and services are referred to herein as "Hiive's Accused Platform").

23.    Hiive's Accused Platform is a private company securities platform that Hiive markets as both a central marketplace and a transaction execution system for trading shares of private, pre-IPO companies.  According to FINRA, Hiive operates as "an alternative trading system for the secondary market trading of shares in private (unlisted) late-stage venture-backed companies and funds."  https://files.brokercheck.finra.org/firm/firm_316580.pdf (BrokerCheck Report for Hiive Markets Limited).

24.    According to Hiive's website, its platform sees "$250M+ of monthly transaction volume" and "more than 60% of US decacorns" (privately held companies with a valuation of more than $10 billion) have had at least one trade on Hiive.  https://www.hiive.com/.   Hiive states it has "facilitated over $2 billion in secondary transactions across 300 private companies." https://trust.hiive.com/subprocessors.

25.    Well after NPM launched its platform, Hiive copied NPM and launched a rival platform. Hiive still uses NPM's public descriptions of its patented technology, nearly verbatim, to describe Hiive's Accused Platform:

| NPM | Hiive |
|---|---|
| "**REMOVING FRICTION** IN THE PRIVATE MARKET."<br><br>"Our **frictionless platform** has been built to the requirements of traders and investors with direct feedback from banks, brokers, and institutional investors."<br><br>https://www.nasdaqprivatemarket.com/product/second-market/. | "**Take the friction out** of secondary trading."<br><br>https://www.hiive.com/funds-investors. |
| "An **institutional-grade** trading platform to buy and sell blocks of private company stock."<br><br>https://www.nasdaqprivatemarket.com/product/second-market/. | "Join our **institutional-grade** marketplace."<br><br>https://www.hiive.com/funds-investors. |

| NPM | Hiive |
|---|---|
| "Transfer + Settlement"<br><br>"Private stock transfer management platform, **streamlining** share transfers through automation and defined controls."<br><br>"**Streamline** Stock Transfer Notice (STN)"<br><br>"Dedicated team and software to **centralize STN, data collection, and custom investor documents**."<br><br>"Track Transfer Activity **Real Time**"<br><br>"Dashboard for tracking of stock transfer agreements, submissions, and transfer progress."<br><br>https://www.nasdaqprivatemarket.com/product/transfer-settlement-solutions/. | "In addition to **streamlining** communications between all participants, Hiive **stores transaction details and documents in a centralized location** called the Hiive Issuer Interface, available in **real time**, which allows for Kraken's easy retrieval."<br><br>https://www.hiive.com/market-articles/simplifying-share-sales-for-kraken.<br><br>"Hiive offers a **centralized** and standardized **share transfer workflow** through a modern platform."<br><br>"Additionally, Hiive's interface provides Kraken with a **central repository for all of its documents**, so they can be accessed in **real time**, in one place."<br><br>https://www.hiive.com/market-articles/how-hiive-transaction-administration-helped-kraken-streamline-stock-transfers. |

| NPM | Hiive |
|---|---|
| "Broker-Agnostic, Standard Process."<br><br>"Standardized and faster transfer process for participants **regardless of trading venue.**"<br><br>https://www.nasdaqprivatemarket.com/product/transfer-settlement-solutions/.<br><br>"As the secondary market for private company shares has grown, share transfers have suffered from a fundamental structural problem: there is no industry-wide standard for how transfer information is provided, received, or processed…NPM's patented process and technology solves this problem at its root…The result is a fully automated, auditable, and scalable settlement process that works across every private company, **regardless of its unique transfer restrictions or equity structure.**"<br><br>https://www.nasdaqprivatemarket.com/nasdaq-private-market-awarded-u-s-patent-for-private-company-securities-clearin/. | "Hiive Transaction Administration provides companies with a centralized platform to manage secondary transfer activity — **regardless of where a trade originates or who the counterparties are.**"<br><br>https://www.hiive.com/market-articles/simplifying-share-sales-for-kraken. |
| **"Negotiate With Counterparty"**<br><br>**"Buyers and sellers** have visibility throughout the whole transaction process and **can directly negotiate live bids and offers.** Once buyers and sellers agree to terms, transactions move forward within the platform."<br><br>https://www.nasdaqprivatemarket.com/who-we-serve/investors/. | **"Deal direct with your counterparty"**<br><br>"On Hiive, you can make, accept, or **negotiate an offer directly with the buyer or seller.**"<br><br>https://www.hiive.com/funds-investors. |

26.    Hiive's Accused Platform receives inputs in non-standardized formats comprising non-standardized information for security orders associated with issuers.  For example, Hiive receives non-standardized information for security orders associated with issuers of private company securities (e.g., Payward, Inc. D/B/A Kraken and Lambda, Inc.) via email and other

channels. This information includes the names and contact information of buyers and sellers,

price per share, the quantity of shares being purchased, and share class:



Exhibit C, Email Chain re Kraken Transfer Notice.

27.    On information and belief, Hiive's Accused Platform (1) communicates with an

application programming interface (API) that provides a standardization process enabling

conversion of data from non-standardized formats to standardized order formats and (2) converts

the non-standardized information into the standardized order format using that standardization

process. This can be inferred because the inputs to Hiive's Accused Platform consist of non-

standardized security order information (e.g., a request to trade a private security via email as

shown above) while the outputs are standardized security orders that enable private securities

trading:

I hope you're having a great week. I am emailing to inform you of a proposed secondary transaction as outlined below. You can also access this information and the signed Notice of Proposed Transfer via the Hiive Issuer Interface – which you would have also recently received an invite link to access. This contains key transaction data and executed documents for all your active and closed transactions through Hiive.

- **Seller:** ▮▮▮▮▮▮
- **Buyer:** ▮▮▮▮▮▮
- **Type of Shares**: Common Shares
- **Number of shares to be transferred**: ▮▮▮▮
- **Price per share**: US$▮▮▮
- **Share certificate numbers:** ▮▮▮▮ shares), ▮▮▮▮ shares), and ▮▮▮▮ shares).

Would you mind confirming receipt of the Notice and letting me know if there is anything you need from us or the seller to commence the ROFR period?

Exhibit D, Email re Proposed Secondary Transaction.

**AG:** Hiive offers a centralized and standardized share transfer workflow through a modern platform. Now, Kraken only has to deal with one person: their dedicated Hiive representative. They liaise between whoever is involved in the transaction, and handle all the administration.

All parties interact through the Hiive platform. Hiive's representative can draft and automatically send complex agreements using Kraken's templates, which reduces the risk of manual error, and ensures the documents are signed in an auditable workflow. Everyone can see where the transaction is in the execution process, which cuts down the need for emails and follow-up requests. Additionally, Hiive's interface provides Kraken with a central repository for all of its documents, so they can be accessed in real time, in one place. This makes it significantly easier for the company to manage its data and records.

https://www.hiive.com/market-articles/how-hiive-transaction-administration-helped-kraken-streamline-stock-transfers.

28. Hiive's Accused Platform generates security orders comprising standardized order data based on the non-standardized information converted, wherein the standardized order data standardizes the input for automatic entry into user interfaces configured for interacting with the security order. For example, Hiive generates security orders and automatically enters standardized information (e.g., number of shares, buyer/seller names, price per share) into user interfaces—including the Hiive Issuer Interface and other dashboards used by issuers, buyers, and sellers.



Exhibit E, Examples of Hiive's User Interfaces.

29.    Hiive's Accused Platform automatically generates and populates, within a first user interface on a first device associated with the issuer, a first notification including standardized order data to the issuer.  These notifications trigger transaction approval countdowns, including for rights of first refusal (ROFR).  https://www.hiive.com/market-articles/hiiveplus-a-new-level-of-market-access ("View details on each transaction from the past year, including price per share, approximate size, share type, transfer type, status, and ROFR outcome.").

> This transaction is available on the platform, and both parties will receive a notification shortly to access it. The next steps will involve reviewing and completing the necessary tasks and documents to progress the transaction. Once we receive the outcome of Kraken's 30-day ROFR period, we will notify both parties through the platform.
>
> ▋ - You will receive automated updates throughout the execution process and upon transaction closure. If you are owed any brokerage fees, please let us know so we can distribute them at closing.

Exhibit C, Email Chain re Kraken Transfer Notice.

> **Company approval**
>
> Companies and certain other investors may have a transfer approval or Right of First Refusal (ROFR) over the company's stock. This means that if you agree to buy shares from an employee of the company, the company can veto the transaction or decide to buy the shares in place of you.
>
> Hiive takes the lead in seeking the company's approval. While we can't make any guarantees, we've already had 170+ companies approve deals that we've brought to them.
>
> Hiive also has multiple direct relationships with some companies that work with us as an official venue for trading. For deals with those companies, working through Hiive may facilitate a more efficient approval process.
>
> Finally, if you are buying via a multi-asset or single-asset fund, the fund manager will be responsible for obtaining the company's approval. You would not need to seek approval for yourself since you are not buying the shares directly.

*See* https://www.hiive.com/guides/investing-in-pre-ipo-companies.

30.    Hiive's Accused Platform automatically generates and populates, within the first user interface and at least one second user interface on at least one second device, a plurality of second notifications to all parties to the security order, requesting a plurality of signatures for a transfer agreement including the standardized order data.  Because there are different interfaces for each type of party (e.g., the "Hiive Issuer Interface" is for issuers specifically rather than for buyers/sellers), and because the parties access these interfaces on different computers, the notifications requesting signatures are generated and populated within multiple user interfaces on multiple devices.



Exhibit E, Examples of Hiive's User Interfaces.

31.     Hiive has touted measurable benefits resulting from the use of its infringing technology.  According to Hiive, "[b]y partnering with Hiive, Kraken sped up transaction closing times by almost 45%," with average closing time falling "from 20 days to 11." https://www.hiive.com/market-articles/simplifying-share-sales-for-kraken; https://www.hiive.com/market-articles/how-hiive-transaction-administration-helped-kraken-

streamline-stock-transfers.  Hiive also claims that "[t]hose efficiency gains allowed Kraken to reduce its buy-side transfer fees by up to 90%."  https://www.hiive.com/market-articles/simplifying-share-sales-for-kraken.

32.    Hiive's Accused Platform, as described above, infringes one or more claims of the '980 Patent.  A preliminary analysis of Hiive's infringement is set forth in the claim charts attached as Exhibit B.

33.    NPM brings this lawsuit to protect its business and enforce its intellectual property rights.

34.    Hiive has had knowledge of the '980 Patent and NPM's infringement allegations since at least March 31, 2026, when it received a Cease & Desist Letter from NPM. Accordingly, Hiive's infringement has been and continues to be willful and deliberate.

## COUNT I

### (Hiive's Direct Infringement of the '980 Patent)

35.    Paragraphs 1 through 34 are incorporated by reference as if fully restated herein.

36.    The '980 Patent is a valid, enforceable patent that was duly issued by the USPTO. *See* Exhibit A.

37.    NPM is the owner, by valid assignment, of the '980 Patent with ownership of all substantial rights in the '980 Patent, including the right to exclude others and to enforce, sue, and recover past and future damages.

38.    On information and belief, Hiive has directly infringed, and continues to directly infringe, at least Claim 1 of the '980 Patent in violation of 35 U.S.C. § 271(a) by, for example and without limitation, making, using, selling, offering for sale, and/or importing Hiive's Accused Platform in the United States.

39.    Claim 1 of the '980 Patent recites:

A method implemented by a private company securities platform executing on at least one processor, the method comprising:

receiving an input in a non-standardized format and comprising non-standardized information for a security order associated with an issuer;

communicating with an application programming interface (API) of the private company securities platform using an API protocol, wherein the API provides a standardization process that enables converting data in at least the non-standardized format to a standardized order format;

converting the non-standardized information into the standardized order format using the standardization process via the API;

generating the security order comprising standardized order data based on the non-standardized information converted, wherein the standardized order data standardizes the input for automatic entry by the private company securities platform into user interfaces (UIs) configured for interacting with the security order;

automatically generating and populating, within a first UI on a first device associated with the issuer, a first notification including the standardized order data to the issuer, the populating of the first notification triggering a countdown for a transaction approval for the issuer automatically in the first UI and with the private company securities platform without further input from the issuer; and

automatically generating and populating, within the first UI and at least one second UI on at least one second device, a plurality of second notifications to all parties to the security order, the plurality of second notifications requesting a plurality of signatures in the first UI and the at least one second UI for a transfer agreement including the standardized order data.

40.    Hiive's platform technology performs each of the above limitations of Claim 1 of the '980 Patent.

41.    A preliminary analysis of Hiive's infringement is set forth in the claim charts attached as Exhibit B, the entirety of which is incorporated in this Complaint for all purposes.

42.    Hiive has committed these acts of infringement in the United States and without license or authorization.

17

43.    Hiive has had knowledge of the '980 Patent and knowledge that Hiive's Accused Platform infringes the '980 Patent since at least March 31, 2026. Accordingly, Hiive has infringed and continues to infringe, willfully, knowingly, and intentionally, the '980 Patent.

44.    NPM has suffered economic harm because of Hiive's infringing activities in an amount to be proven at trial but in no case less than a reasonable royalty.

45.    Hiive has caused, and unless restrained and enjoined will continue to cause, irreparable injury and damage to NPM for which there is no adequate remedy at law. Unless enjoined by this Court, Hiive will continue to infringe the '980 Patent.

**COUNT II**

**(Hiive's Induced Infringement of the '980 Patent)**

46.    Paragraphs 1 through 45 are incorporated by reference as if fully restated herein.

47.    On information and belief, Hiive knowingly and intentionally induces others to infringe at least Claim 1 of the '980 Patent in violation of 35 U.S.C. § 271(b) by instructing or aiding others to use Hiive's Accused Platform in the United States in a manner that infringes at least Claim 1 of the '980 Patent. *See* Exhibit B, the entirety of which is incorporated in this Complaint for all purposes.

48.    Since at least March 31, 2026, Hiive has been aware of the '980 Patent and aware that implementation and use of Hiive's Accused Platform infringes the '980 Patent.

49.    Despite its knowledge of the '980 Patent, Hiive continues to actively encourage, aid, and instruct its customers and/or partners to implement and use Hiive's Accused Platform in the United States in ways that directly infringe the '980 Patent (e.g., by instructing customers and partners how to use Hiive's Accused Platform for private securities trading in an infringing

18

manner).  Hiive does so knowingly and with the intention that its customers, affiliates, and/or partners will commit infringing acts.

50.      Hiive also continues to provide Hiive's Accused Platform to customers in the United States—despite Hiive's knowledge of the '980 Patent and that Hiive's Accused Platform infringes the '980 Patent—thereby specifically intending for and inducing its customers to infringe the '980 Patent through the customers' and/or partners' normal and customary use of Hiive's Accused Platform.

51.      NPM has suffered economic harm because of Hiive's induced infringement in an amount to be proven at trial but in no case less than a reasonable royalty.

52.      Hiive has caused, and unless restrained and enjoined will continue to cause, irreparable injury and damage to NPM for which there is no adequate remedy at law.  Unless enjoined by this Court, Hiive will continue to induce infringement of the '980 Patent.

## COUNT III

### (Hiive's Contributory Infringement of the '980 Patent)

53.      Paragraphs 1 through 52 are incorporated by reference as if fully restated herein.

54.      On information and belief, Hiive has knowingly and willfully contributed, and continues to contribute, to its customers', affiliates', and/or partners' direct infringement of the '980 Patent in violation of 35 U.S.C. § 271(c) by using, selling, or offering to sell Hiive's Accused Platform to customers and/or partners in the United States. *See* Exhibit B, the entirety of which is incorporated in this Complaint for all purposes.

55.      As described above, Hiive provides its customers, affiliates, and/or partners with Hiive's Accused Platform, which is specially made and adapted for use in trading private company securities.  Hiive's Accused Platform is not a staple article of commerce or suitable for

19

any non-infringing use.  Use and implementation of Hiive's Accused Platform by Hiive and its customers in the United States infringes at least Claim 1 of the '980 Patent.

56.    Hiive has been aware of the '980 Patent and aware that implementation and use of Hiive's Accused Platform infringes the '980 Patent since at least March 31, 2026.

57.    NPM has suffered economic harm because of Hiive's contributory infringement in an amount to be proven at trial but in no case less than a reasonable royalty.

58.    Hiive has caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to NPM for which there is no adequate remedy at law.  Unless enjoined by this Court, Hiive will continue to contribute to infringement of the '980 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Nasdaq Private Market, LLC respectfully requests the following relief:

1.    A judgment that Hiive has directly infringed the '980 Patent;

2.    A judgment that Hiive has contributorily infringed the '980 Patent;

3.    A judgment that Hiive has induced infringement of the '980 Patent;

4.    A judgment that awards NPM all appropriate damages under 35 U.S.C. § 284 for Hiive's past, current, and any continuing or future infringement of the Asserted Patent, together with prejudgment and post-judgment interest, costs, and disbursements to adequately compensate NPM for Hiive's infringement;

5.    An adjudication that Hiive's infringement of the Asserted Patent has been willful and deliberate;

6.    An adjudication that NPM be awarded enhanced damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Hiive's willful and deliberate infringement of the Asserted Patent;

7.      An adjudication that this case is exceptional within the meaning of 35 U.S.C. § 285, and an award of NPM's reasonable attorneys' fees;

8.      An adjudication that NPM be awarded the attorneys' fees, costs, and expenses it incurs in prosecuting this action;

9.      An order permanently enjoining Hiive, its officers, agents, servants, employees, attorneys, and affiliated companies, their assigns and successors in interest, and those persons in active concert or participation with them, from continued acts of infringement of the Asserted Patent;

10.      A judgment that awards, in lieu of an injunction, a compulsory forward royalty for infringement of the Asserted Patent; and

11.      An adjudication that NPM be awarded such further relief at law or in equity as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

NPM hereby demands a trial by jury of all issues so triable.

ASHBY & GEDDES

*Of Counsel:*

Tiffany Cooke
Jamie Raju
Rohit Raguram
HAYNES AND BOONE, LLP
2801 North Harwood Street, Suite 2300
Dallas, TX 75201
(214)-651-5000
Tiffany.cooke@haynesboone.com
Jamie.raju@haynesboone.com
Rohit.raguram@haynesboone.com

Dated:  May 6, 2026

*/s/ Andrew C. Mayo*
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Plaintiff*

21